**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MOHAMMAD POURSINA,
　　　　　　*Plaintiff-Appellant*,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES; DAVID
ROARK, Director, Texas Service
Center, United States Citizenship
and Immigration Services; JAMES
MCCAMENT, Acting Director, United
States Citizenship and Immigration
Services; RON ROSENBERG, Chief,
Administrative Appeals Office,
United States Citizenship and
Immigration Services,
　　　　　　*Defendants-Appellees.*

No. 17-16579

D.C. No.
4:16-cv-00591-
RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted February 12, 2019
San Francisco, California

Filed August 28, 2019

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Immigration

Affirming the district court's dismissal for lack of subject-matter jurisdiction of Mohammad Poursina's suit challenging the denial of his petition for a national-interest waiver related to his application for a work visa, the panel held that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the federal courts of jurisdiction to review the denial of a national-interest waiver.

Poursina applied to the United States Citizenship and Immigration Services (USCIS) for a permanent employment-based visa. Generally, an immigrant seeking such a visa must show that his services are sought by an employer in the United States. Because Poursina could not make that showing, he submitted a petition for a national-interest waiver under 8 U.S.C. § 1153(b)(2)(B)(i), which provides that USCIS "may, when [USCIS] deems it to be in the national interest, waive" the requirement that the alien's services be sought by a U.S. employer. USCIS denied the petition, and Poursina sought review in the district court, which dismissed for lack of subject-matter jurisdiction.

---

[*]This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the federal courts of jurisdiction to review the denial of a national-interest waiver.  Section 1252(a)(2)(B)(ii) provides that no court shall have jurisdiction to review "a decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  The panel concluded that § 1153(b)(2)(B)(i)'s plain language specifies that the authority to grant (or to deny) a national-interest waiver is in the discretion of the Attorney General.  In so concluding, the panel explained that the statute states that the Attorney General *may* waive the requirement and explained that the statute's instruction that the waiver should only issue if the Attorney General "deems it to be in the national interest" reinforces its discretionary nature.

The panel also noted that § 1252(a)(2)(B)(ii) allows the courts to review certain legal conclusions, but concluded that the exception did not save Poursina's non-constitutional claims because they simply repacked his core grievance that USCIS should have exercised its discretion in his favor. Reviewing Poursina's due process claim that he did not receive a copy of USCIS's request for evidence or the denial of his second petition, the panel observed that his constitutional claim also was not subject to § 1252(a)(2)(B)(ii)'s bar, but concluded that the claim failed on the merits because notice was reasonably calculated to reach him.

## COUNSEL

Stacy Tolchin (argued) and Megan Brewer, Law Offices of Stacy Tolchin, Los Angeles, California, for Plaintiff-Appellant.

Yamileth G. Davila (argued) and Glenn Girdharry, Assistant Directors; William C. Peachey, Director, District Court Section; Office of Immigration Litigation, Civil Division, United States Department of Justice; Washington, D.C., for Defendants-Appellees.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether federal courts may review the denial of a "national-interest waiver" by the United States Citizenship and Immigration Services to an Iranian citizen with advanced engineering degrees who sought a permanent visa.

I

A

Mohammad Poursina is an Iranian citizen with two degrees in mechanical engineering from the University of Tehran. In 2006, he entered the United States on a student visa to continue his studies at the Rensselaer Polytechnic Institute in Troy, New York. Between 2006 and 2011, Poursina's student status authorized him to live and to work in the United States, but his authorization lapsed after he earned his doctoral degree. Thus, in June 2012, Poursina asked the United States Citizenship and Immigration

Services ("USCIS") to grant him a permanent employment-based visa under 8 U.S.C. § 1153(b)(2).

1

Pursuant to such provision, USCIS may grant work visas to immigrants holding "advanced degrees" or to those with "exceptional ability in the sciences, arts, or business."[1] 8 U.S.C. § 1153(b)(2)(A). Generally, an immigrant seeking a work visa must show that his "services . . . are sought by an employer in the United States." *Id.* To do so, he must obtain a "labor certification" from the United States Department of Labor. *See* 8 U.S.C. § 1182(a)(5)(A), (D); 8 C.F.R. § 204.5(k)(4).

But there is an exception to the labor-certification requirement: "[USCIS] may, when [USCIS] deems it to be in the national interest, waive the requirements of subparagraph (A) that an alien's services . . . be sought by an employer in the United States." 8 U.S.C. § 1153(b)(2)(B). No statute defines when such a "national-interest waiver" should be granted, but USCIS has issued "precedent[ial] decision[s] establishing a framework for evaluating national interest waiver petitions." *In re Dhanasar*, 26 I. & N. Dec. 884, 886 (USCIS AAO 2016) (citing *In re N.Y. State Dep't*

---

[1] The statute's text authorizes the Attorney General to grant work visas, but Congress transferred that authority to the Secretary of Homeland Security in the Homeland Security Act of 2002. Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (codified at 6 U.S.C. § 557). In turn, the Secretary sub-delegated it to USCIS. *See* 8 C.F.R. § 100.1; *id.* § 204.5; *see also Zhu v. Gonzales*, 411 F.3d 292, 293 (D.C. Cir. 2005) (discussing the source of USCIS's authority); *In re Dhanasar*, 26 I. & N. Dec. 884, 886 & n.2 (USCIS AAO 2016) (same). References to the Attorney General in this opinion therefore apply to USCIS.

*of Transp.* (*NYSDOT*), 22 I. & N. Dec. 215 (BIA 1998), *overruled by Dhanasar*, 26 I & N. Dec. at 884).

2

Poursina could not show that an employer sought his services, so he requested a national-interest waiver when he submitted his 2012 visa application. In 2014, USCIS denied his request, and Poursina then appealed to USCIS's Administrative Appeals Office ("AAO"). The AAO concluded that the "evidence submitted" did not "establish[] that a waiver of the requirement of an approved labor certification w[ould] be in the national interest of the United States." The AAO therefore dismissed Poursina's appeal.

B

Poursina then brought this suit in the District of Arizona challenging USCIS's denial of his petition. He alleged that USCIS's refusal to grant a national-interest waiver violated the Immigration and Nationality Act ("INA"), violated the agency's own regulations and precedential decisions, and was arbitrary and capricious under the Administrative Procedure Act ("APA"). Poursina therefore asked the district court to order USCIS either to reconsider its refusal or to grant him an employment-based visa.

The district court dismissed Poursina's claims for lack of subject-matter jurisdiction, reasoning that 8 U.S.C. § 1252(a)(2)(B)(ii) barred review. Such provision precludes federal courts from reviewing certain decisions "the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Citing our unpublished decision in *Sodipo v. Rosenberg*, the district court concluded that USCIS's decision to deny a national-

interest waiver was a discretionary decision that the court lacked jurisdiction to review. 679 F. App'x 633, 633–34 (9th Cir. 2017) (holding that a decision to deny a national-interest waiver falls under § 1252(a)(2)(B)(ii)).

Poursina timely appealed.

## II

Poursina contends that the district court erred in concluding that it lacked jurisdiction to consider his claim. He argues that 28 U.S.C. § 1331—the general federal-question jurisdictional statute—allows the district court to consider his APA challenge to USCIS's denial of his request for a national-interest waiver. By contrast, the government urges that § 1252(a)(2)(B)(ii) strips the district court of jurisdiction to consider Poursina's claims. It argues that USCIS's refusal to issue a national-interest waiver is "specified" by statute to be in its "discretion."

## A

Presented with these competing claims, it falls to us to decide whether the decision to grant (or to refuse) a national-interest waiver comes within § 1252(a)(2)(B)(ii)'s jurisdictional bar. The Supreme Court has instructed that such jurisdictional statutes must be "construed both with precision and with fidelity to the terms by which Congress has expressed its wishes." *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968)). At the same time, challenges to administrative action enjoy a "presumption favoring judicial review," which applies with particular force to "questions concerning the preservation of federal-court jurisdiction." *Id.* at 251. These background principles inform our analysis here.

1

We begin with the text of § 1252(a)(2)(B)(ii)'s jurisdictional bar:

> [R]egardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the *authority* for which is *specified* under this subchapter to be in the *discretion* of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). By its own terms, such provision "refers not to 'discretionary decisions,' . . . but to acts the *authority* for which is *specified* under the INA to be discretionary." *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003). Given such text, our cases hold that the provision precludes review only if a congressional statute—codified in the relevant subchapter, *see* 8 U.S.C. §§ 1151–1382—vests the government with authority to make a discretionary decision. *See ANA Int'l, Inc. v. Way*, 393 F.3d 886, 891–93 (9th Cir. 2004) ("*ANA International*"); *Spencer Enters.*, 345 F.3d at 689–91. Stated differently, it is not enough that a decision *is* discretionary, as with non-enforcement decisions under background rules of administrative law, *see, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 832–33 (1985); instead, Congress must *state* that the government has such discretion. *See Soltane v. U.S. Dept. of Justice*, 381 F.3d 143, 146 (3rd Cir. 2004) (Alito, J.) ("The key to § [1252(a)(2)(B)(ii)] lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by statute.").

Here, Congress has "specified" that the issuance of national-interest waivers is "discretionary." Once again, the statute states that "the Attorney General *may*, when the Attorney General *deems* it to be in the national interest, waive the requirement[] . . . that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States." 8 U.S.C. § 1153(b)(2)(B)(i) (emphasis added). Congress's use of "may"—rather than "must" or "shall"—brings along the usual presumption of discretion. *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005). Indeed, subsection (B)(i)'s use of "may" contrasts with subsection (B)(ii), which delineates cases in which the Attorney General "*shall* grant a national interest waiver." 8 U.S.C. § 1153(a)(2)(B)(ii)(I) (emphasis added).

Further, the statute's instruction that the waiver should issue only if the Attorney General "deems it to be in the national interest" reinforces its discretionary nature. Congress's use of "deems" connotes that the Attorney General's determination involves some measure of judgment. And the invocation of the "national interest" is a core example of a consideration that lacks a judicially manageable standard of review. Thus, in *Webster v. Doe*, the Supreme Court concluded that an analogous provision "fairly exude[d] deference" to the Executive Branch. 486 U.S. 592, 600 (1988) (discussing a statute that provided that "the Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States")).

Indeed, the D.C. Circuit has already concluded that review of "a decision to deny a waiver of the labor

certification requirement [is] barred by § 1252(a)(2)(B)(ii)." *Zhu v. Gonzales*, 411 F.3d 292, 294 (D.C. Cir. 2005). Parsing § 1153(b)(2)(B)(i)'s text, the D.C. Circuit reasoned that Congress's use of "'national interest' . . . calls upon [the Attorney General's] expertise and judgment unfettered by any statutory standard whatsoever," and that the use of the permissive "may" indicated that his decision is "not to be questioned . . . in a court." *Id.* at 295 (internal quotation marks omitted). Indeed, citing our decision in *Spencer Enterprises*, the D.C. Circuit held that the decision to deny a national-interest waiver "is, in the parlance of the Ninth Circuit, 'entirely discretionary.'" *Id.* (quoting *Spencer Enters.*, 345 F.3d at 690).

We agree. Altogether, § 1153(b)(2)(B)(i)'s plain language specifies that the authority to grant (or to deny) a national-interest waiver is in the discretion of the Attorney General.

2

Our conclusion that § 1252(a)(2)(B)(ii) bars review of decisions under § 1153(b)(2)(B)(i) is buttressed by the Supreme Court's interpretation of a neighboring jurisdictional bar: § 1252(a)(2)(B)(i). *See Kucana*, 558 U.S. at 233. Section 1252(a)(2)(B)(i) precludes courts from reviewing "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." For ease of reference, we refer to § 1252(a)(2)(B)'s two jurisdiction-stripping provisions as "clause (i)" and "clause (ii)."

In *Kucana*, the Supreme Court stated that clauses (i) and (ii) should be read "harmoniously." 558 U.S. at 247. The Court reasoned that clause (i) enumerates several specific decisions that Congress "insulated from judicial review,"

while clause (ii) functions as a "catchall provision" precluding review over "decisions of the same genre." *Id.* at 246. The Court based such conclusion both on the "proximity" of the two clauses and on the "words linking them." *Id*. Specifically, after clause (i) lists the series of statutes regarding which review is barred, clause (ii) states that "*any other decision*" specified to be discretionary is also barred. *Id.* (emphasis added). Under *Kucana*'s reasoning, therefore, the language of the provisions enumerated in clause (i) "is instructive in determining the meaning of the clause (ii) catchall." *Id.* at 247.

Relevant here, Congress used language similarly authorizing the Attorney General to *elect* to take certain actions under the provision governing national-interest waivers, *see* § 1153(b)(2)(B)(i), and under the provisions enumerated in clause (i), *see* 8 U.S.C. § 1182(h) ("The Attorney General may, in his discretion, waive . . ."); *id.* § 1182(i) ("The Attorney General may, in the discretion of the Attorney General, waive . . ."); *id.* § 1229b(a) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . ."); *id.* § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States . . . if the alien is not deportable . . ."); *id.* § 1255 ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if . . ."). Just like the language in the national-interest-waiver provision, each of these provisions uses "may" to authorize the Attorney General to take some action—reaffirming that Congress's inclusion of "may" confers the kind of discretion contemplated in § 1252(a)(2)(B).

Indeed, even the variation among these clause (i) provisions suggests that § 1153(b)(2)(B)(i) confers a similar type of discretion. Sometimes, Congress chose expressly to commit a decision to the Attorney General's "discretion." For instance, one provision states that he "may, *in his discretion*, waive" certain requirements. 8 U.S.C. § 1182(h) (emphasis added); *see also id.* § 1255(a) (similar). Elsewhere, however, Congress listed a series of conditions that *must* be satisfied before the Attorney General exercises his discretion. Another provision, for instance, states that the Attorney General "may cancel removal," but only if the alien has been a "permanent residen[t]" for five years, has resided here for seven, and has not been "convicted of any aggravated felony." 8 U.S.C. § 1229b(a).

These variations among the clause (i) provisions demonstrate that Congress used a wide range of language to commit decisions to the government's discretion, and § 1153(b)(2)(B)(i)'s language is comfortably within that range. Although it does not expressly mention "discretion," the condition on the Attorney General's power (*i.e.*, that its exercise be "in the national interest") is far less restrictive than, say, those delineated in § 1229b(a). Thus, § 1153(b)(2)(B)(i) falls within the "genre" of "decisions . . . made discretionary by legislation." *Kucana*, 558 U.S. at 246–47.

The Court's reasoning in *Kucana* therefore supports our conclusion that § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review USCIS's decision to deny a national-interest waiver to Poursina.

B

Poursina responds that our decision in *ANA International* compels a contrary result. There, we held that

§ 1252(a)(2)(B)(ii) did not prevent the court from reviewing the Attorney General's revocation of a visa under 8 U.S.C. § 1155. 393 F.3d at 888–89. The statute in that case read as follows: "the Attorney General 'may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition [for an immigrant visa].'" *Id.* at 893 (quoting 8 U.S.C. § 1155). Although we conceded that such language conferred "some measure of discretion," we nevertheless held that Congress's use of "good and sufficient cause" bounded the Attorney General's discretion "by objective criteria"—and thus rendered the claim reviewable. *Id.* at 893–94. Importantly, to find such objective criteria, we turned to "the agency's own published interpretation of its statute," reasoning that it could inform how the court should "read th[e] statute." *Id.* at 893; *see also id.* at 894 (citing *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305 (9th Cir. 1984); *Matter of Tawfik*, 20 I. & N. Dec. 166 (BIA 1990)).

Poursina invites us to extend *ANA International*'s reasoning to the present case. He notes that both statutes bear the same basic linguistic and logical structure: if the Attorney General "deems" *X*, then he "may" do *Y*. And just as an agency rule in *ANA International* gave determinative content to "good or sufficient cause," he argues, so too agency interpretations of § 1153(b)(2)(B)(i) can inform the meaning of "in the national interest." *See Dhanasar*, 26 I. & N. Dec. at 884; *NYSDOT*, 22 I. & N. Dec. at 215. Because these interpretations impose "objective criteria" that constrain USCIS's exercise of discretion, Poursina continues, the refusal to issue a national-interest waiver falls outside of § 1252(a)(2)(B)(ii)'s jurisdictional bar.

1

Contrary to Poursina's argument, this case is different from *ANA International*. First, the USCIS decision that Poursina argues imposes "objective criteria" on its discretion does no such thing. An alien seeking a national-interest waiver must show:

> (1) that the foreign national's proposed endeavor has both *substantial merit* and *national importance*; (2) that the foreign national is well positioned to advance the proposed endeavor; and (3) that, on balance, it would be *beneficial to the United States* to waive the requirements of a job offer and thus of a labor certification. If these three elements are satisfied, USCIS *may* approve the national interest waiver *as a matter of discretion*.

*Dhanasar*, 26 I. & N. Dec. at 889 (emphasis added). Such test might flesh out the substance of the "national interest" language, but it still calls for a series of open-ended judgments—about "substantial merit," "national importance," and "benefit[s] to the United States"—that fall well short of an administrable "legal standard[] that will permit review under § 1252." *ANA Int'l*, 393 F.3d at 893. Moreover, USCIS's decision still expressly reserves the power to issue a national-interest waiver "as a matter of discretion."[2]

---

[2] Poursina also cites the agency's older precedent in *NYSDOT*, 22 I. & N. Dec. at 215, which *Dhanasar* overruled. Regardless, that decision

Likewise, the *statute* in this case differs from the one in *ANA International*. In a variety of contexts, federal courts must make findings of "good cause." *E.g.*, *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 715 (2019) (collecting examples from the Federal Rules of Appellate, Criminal, and Civil Procedure); *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (discussing the "good cause" exception to the APA's requirement for notice-and-comment rulemaking); *Blake v. Baker*, 745 F.3d 977, 980–81 (9th Cir. 2014) (discussing, in a habeas case, "what constitutes good cause to excuse a petitioner's failure to exhaust"). Because good-cause determinations often fall to federal judges, Congress's choice of such language might impose an administrable legal standard on the government—and thus one that renders its decision reviewable, despite § 1252(a)(2)(B)(ii)'s jurisdictional bar.

By contrast, the "national interest" standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2409 (2018) (explaining that where the President has statutory discretion to determine if an alien's entry "would be detrimental to the interests of the United States," federal courts should not inquire "into the persuasiveness of the President's justifications"). We ought not infer from Congress's use of "national interest" that, notwithstanding § 1252(a)(2)(B)(ii), federal courts should review the refusal to issue a national-interest waiver. Thus, we conclude that the statute's use of "in the national

---

establishes a similarly open-ended test, *see id.* at 217–18, so nothing turns on which one we evaluate.

interest," rather than "for good and sufficient cause," distinguishes the present case from *ANA International*.

## 2

Indeed, even if the present statute resembled the one discussed in *ANA International*, we would hesitate to extend such decision beyond its narrow holding. First, doing so could create tension with *Kucana*, which held that § 1252(a)(2)(B) applies *only* to "determinations made discretionary by statute"—*not* to "determinations declared discretionary . . . through regulation." *Kucana*, 558 U.S. at 237. If an agency regulation cannot render a decision discretionary (and thus forbid review), then neither should it render it non-discretionary (and thus permit review). *Cf. id*. at 252 ("By defining the various jurisdictional bars by reference to other provisions in the INA itself, Congress ensured that it, and only it, would limit the federal courts' jurisdiction. To read § 1252(a)(2)(B)(ii) to apply to matters where discretion is conferred on the Board by regulation, rather than on the Attorney General by statute, would ignore that congressional design.").

Second, *ANA International* is an outlier among the federal circuit courts. *See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 484–85 (1st Cir. 2016); *Mehanna v. U.S. Citizenship & Immigration Servs.*, 677 F.3d 312, 314–15 (6th Cir. 2012); *Green v. Napolitano*, 627 F.3d 1341, 1345 n.3 (10th Cir. 2010); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 204 (3d Cir. 2006); *Holy Virgin Prot. Cathedral of the Russian Orthodox Church Outside Russia v. Chertoff*, 499 F.3d 658, 661–62 (7th Cir. 2007); *Ghanem v. Upchurch*, 481 F.3d 222, 223–25 (5th Cir. 2007). We are disinclined to depart further from such decisions.

In sum, because USCIS's decision to deny a national-interest waiver is specified to be in its discretion, § 1252(a)(2)(B)(ii) strips the federal courts of jurisdiction to review USCIS's refusal.

## III

Next, Poursina contends that, even if the ultimate issuance of the waiver remains discretionary, several of USCIS's underlying conclusions remain reviewable because they were "purely legal" questions and thus "non-discretionary." He alleges, as relevant here, that the agency's regulations and precedential decisions misinterpret § 1153(b)(2)(B), that the agency failed to consider certain evidence, and that the agency misinterpreted the evidence it did consider. He also claims that USCIS violated his due process rights because the agency failed to provide proper notice when it denied a *second* request for a national-interest waiver, which he filed in 2014.

## A

Although § 1252(a)(2)(B)(ii) allows us to review certain legal conclusions made on "nondiscretionary grounds," *Mamigonian v. Biggs*, 710 F.3d 936, 945 (9th Cir. 2013); *see also Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004), such exception does not save his non-constitutional claims. The essence of Poursina's complaint is that USCIS should have exercised its discretion to issue a national-interest waiver, and his various claims simply repackage that core grievance. At bottom, USCIS rejected Poursina's application because it concluded that Poursina did not "establish[] that a waiver . . . w[ould] be in the national interest of the United States." For the reasons expressed above, such a determination is not a "purely legal" decision, but rather a core exercise of the discretion that the

statute vests in the government. Poursina's argument therefore fails.

## B

Finally, Poursina challenges the denial of his *second* request for a national-interest waiver as a deprivation of due process. In 2014, Poursina filed another application for an employment-based visa, and he again asked USCIS to waive the labor-certification requirement. USCIS issued a "request for evidence" and mailed it to Poursina's home address. Because Poursina did not respond, USCIS concluded that his application had been "abandon[ed]" and therefore denied it. Poursina claims, however, that he "never received a copy" of the request for evidence or the denial of the second petition. Poursina therefore argues that he "did not receive proper notice" of USCIS's request for evidence and the subsequent denial of the petition.

This constitutional claim is not subject to § 1252(a)(2)(b)(ii)'s jurisdictional bar. *See Kwai Fun Wong*, 373 F.3d at 963 ("[D]ecisions that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B)."). Nevertheless, Poursina's claim fails on the merits because notice was "reasonably calculated to ensure that notice reach[ed]" him. *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950)). Here, Poursina admits that the request for evidence and the denial of his petition were sent to his home address on June 30, 2014, and October 7, 2014, respectively. But Poursina did not update his address with USCIS until June 8, 2015—almost a year later. Thus, USCIS satisfied due process because it sent notice by regular mail "to the address given." *Id*. Poursina's constitutional argument also fails.

IV

The judgment of the district court is **AFFIRMED**.